# In the United States Court of Federal Claims

ASKAN HOLDINGS, LTD.,

    *Plaintiff,*

v.

THE UNITED STATES,

    *Defendant.*

No. 21-1793C
(Filed: May 12, 2022)

*Teresa N. Taylor*, Butzel Long, P.C., Washington, DC, for Plaintiff.

*Nathaniel B. Yale*, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, with whom were *Franklin E. White, Jr.*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Acting Assistant Attorney General, all of Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER,** *Judge*.

    This case concerns Askan Holdings, Ltd.'s ("Askan" or "Plaintiff") claim that the United States effectuated a taking of its property without just compensation by using emergency economic powers to block a financial transaction and unduly delay the return of the blocked funds. The United States moves to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). It argues that Plaintiff's claims are issue-precluded; pre-existing litigation prevents this Court from exercising jurisdiction under 28 U.S.C. § 1500; Plaintiff's claims are moot; and Plaintiff, a foreign holding company, lacks standing to make a takings claim. The United States also moves to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). Plaintiff filed a motion requesting oral argument, which the United States did not oppose. For the reasons set forth below, the United States' Motion to Dismiss is **GRANTED**, Plaintiff's Motion for Oral Argument is **DENIED** as moot, and the Complaint must be **DISMISSED**.

**I.    Background**

    **A.    Factual History**

    The following facts are based on the allegations in Plaintiff's Complaint, which the Court accepts as true solely for the purpose of ruling on the Government's pending Motion to Dismiss. The Court also considers filings in Plaintiff's other relevant lawsuits for the purpose of determining whether the Court retains jurisdiction to adjudicate the instant case. *See Rocovich v.*

*United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) (explaining that the court may go outside the pleadings when ruling on a motion to dismiss under RCFC 12(b)(1) and "inquire into jurisdictional facts" to determine whether it may exercise jurisdiction).

Askan is an aircraft holding company registered in Seychelles, with a principal place of business in Turkey. It is a wholly owned subsidiary of Transylvania International Airlines SRL ("TIA"), a Romanian aircraft operation company. Compl. ¶ 1, ECF No. 1. In order to obtain an aircraft operator certificate, which would allow it to operate a commercial airline in Europe, TIA created Askan to purchase an airplane. *Id.* ¶ 4. After "enter[ing] into various contracts and agreements with airports and other partners" and "investing substantial sums of money into the business," Askan negotiated a deal to buy an aircraft. *Id.* It "voluntarily dealt with an American company based in Arizona, JetPro International, LLC ('JetPro'), in American dollars." *Id.* ¶ 5.

Askan made a down payment on the aircraft, depositing the money with a Swiss law firm called Froriep as escrow agent, but JetPro subsequently cancelled the transaction. *Id.* ¶ 6. Askan then requested that Froriep return the $923,000 down payment, less an escrow fee. *Id.* On February 3, 2016, Froriep attempted to transfer $915,960.96 to Askan's Turkish bank account but the transaction was blocked when the American currency passed through Deutsche Bank Trust Company Americas ("Deutsche Bank") in New York. *Id.* This hold came at the instruction of the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). *Id.* ¶ 7.

OFAC enforces the Global Terrorist Sanctions Regulations ("GTSR") under 31 C.F.R. Part 594, which prohibit transactions between U.S. persons and individuals or entities that have certain affiliations or suspected affiliations with terrorist activity. 31 CFR § 594.201; *see also* Compl. ¶ 2. Pursuant to the GTSR, Deutsche Bank was required to place Askan's funds in an account in the United States, where the funds remained blocked, and it was prohibited from returning Askan's property without a specific license from OFAC. Compl. ¶ 7. Both Froriep and Askan petitioned OFAC to unblock the funds but OFAC denied the petitions with no detailed explanation; it disclosed only that an individual or entity sanctioned under the GTSR had an interest in the transaction. *Id.* ¶¶ 8–10. For two years, Askan employed attorneys and experts to determine whose interest in the transaction may have triggered the block, but it was unable to find a single sanctioned entity or individual with an interest in the transaction. *Id.* ¶¶ 9–10. Because of the blocked funds and uncertainty of whether future deals would be blocked, Askan's business suffered. *Id.* ¶ 9.

On October 9, 2019, Askan filed another petition with OFAC. *Id.* ¶ 11. On June 2, 2020, after receiving no response, Askan initiated a lawsuit in the United States District Court for the District of Columbia (the "District Court Case"). *See* Compl., *Askan Holdings, Ltd. v. Office of Foreign Assets Control*, No. 20-1458 (D.D.C. June 20, 2020) (Dkt. 1); *see also* Def.'s App. at 3, ECF No. 11-1; Compl. ¶ 12. On August 17, 2020, OFAC issued a license authorizing Deutsche Bank to release the funds to Askan. Compl. ¶ 13. However, Askan could not retrieve the funds because OFAC previously authorized Deutsche Bank to transfer them to the Office of the

Comptroller of the State of New York, which escheated the funds in November 2019.[1]  *Id.* ¶ 14.  Finally, in March 2021, Askan received the blocked funds from the Comptroller.  *Id.* ¶ 15.

### B. Litigation History

#### 1. Prior Cases

On June 2, 2020, Askan filed its Complaint in the District Court Case against OFAC, the OFAC Director, and the Secretary of the Treasury, alleging violations of the Administrative Procedure Act (APA) and the Fifth Amendment Due Process Clause.  *See* Def.'s App. at 3; Compl., District Court Case.  After Askan learned of the escheatment to the Comptroller, it filed an amended complaint on November 9, 2020, in which it named OFAC, the OFAC Director, the Secretary of the Treasury, the Office of the Comptroller, and the Comptroller in his official capacity, as defendants.  *See* Def.'s App. at 7, 11–27.  This Amended Complaint alleged violations of the Freedom of Information Act, the APA, the Fifth Amendment Due Process Clause, and 42 U.S.C. § 1983, and sought injunctive relief compelling the return of its funds.  *See id.* at 11, 25–26.

On December 16, 2020, Askan filed a lawsuit against OFAC in the Court of Federal Claims ("*Askan I*"), alleging two violations of the Fifth Amendment Takings Clause.  *See* Compl., *Askan Holdings, Ltd. v. United States*, No. 20-1870C (Fed. Cl. Dec. 16, 2020) (Dkt. 1) ("*Askan I* Compl.").  On February 26, 2021, before any dispositive motions were filed in *Askan I*, Askan filed a stipulation of dismissal in the District Court Case, in which it agreed to dismiss the claims against the Comptroller and the Office of the Comptroller in exchange for the return of the escheated funds, with interest.  Def.'s App. at 31–33.  However, its claims against OFAC remained.  *See id.* at 8, 31–33.

On April 2, 2021, after receiving the funds from New York State, Askan filed an amended complaint in *Askan I*, asserting a single claim under the Takings Clause.  *See* Am. Compl., *Askan I*, No. 20-1870C (Fed. Cl. Apr. 2, 2021) (Dkt. 8).  On August 19, 2021, after briefing and oral argument, the *Askan I* court granted the Government's Motion to Dismiss.  *Askan I*, 155 Fed. Cl. 216, 225 (2021).  The court held that it lacked jurisdiction over the claim pursuant to 28 U.S.C. § 1500, which deprives the Court of Federal Claims of jurisdiction when a suit "for or in respect to" the same claim is pending in another court at the time the complaint is filed.  *Id.*; 28 U.S.C. § 1500.  On September 23, 2021, during the pendency of the instant case, the court in the District Court Case dismissed Askan's claims as moot.  Mem. Op., *Askan Holdings, Ltd. v. Office of Foreign Assets Control*, No. 20-1458 (D.D.C. Sept. 23, 2021) (Dkt. 59).

---

[1] Under New York law, a banking organization "shall pay or deliver to the state comptroller all property which, as of the thirtieth day of June next preceding, was deemed abandoned pursuant to [New York's Abandoned Property Law], held or owing by such banking organization."  N.Y. Aband. Prop. Law § 303 (McKinney 2011).

### 2. The Instant Case

Plaintiff filed its Complaint in the instant case on September 2, 2021. *See* Compl. On November 15, 2021, Defendant filed a motion to dismiss pursuant to RCFC 12(b)(1) or, in the alternative, RCFC 12(b)(6). *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 11. In its Motion, the United States argues that this Court lacks jurisdiction over the dispute because (1) Plaintiff's suit is "for or in respect to" the same claim that existed in the District Court at the time the Complaint was filed; (2) as a foreign corporation without substantial contacts with the United States, Plaintiff lacks standing to bring a takings claim; and (3) Plaintiff's claims are moot. *Id.* at 12–22. Defendant also asserts that Plaintiff failed to state a claim upon which relief could be granted. *Id.* at 22–36.

On January 17, 2022, Plaintiff filed a response. *See* Pl.'s Resp. to Mot. to Dismiss ("Pl.'s Resp."), ECF No. 14. Defendant filed a reply in support of its Motion on February 15, 2022. Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF No. 15. The next day, Plaintiff moved for a hearing on its Response to the Motion to Dismiss. Mot. for Hr'g on Opp. to Mot. to Dismiss, ECF No. 18. On March 2, 2022, the Government filed a response in which it stated that it would defer to the Court regarding the need for oral argument. Def.'s Resp. to Pl.'s Mot. for Oral Arg., ECF No. 21.

## II. Discussion

### A. Standard of Review

When considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in a light most favorable to the plaintiff. *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)). Still, the plaintiff bears the burden to demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

### B. Subject Matter Jurisdiction

The Tucker Act grants the Court of Federal Claims authority "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Although the statute waives sovereign immunity, it does not create a substantive cause of action; a plaintiff must still "identify a separate source of substantive law that creates the right to money damages." *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (stating that "the plaintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages

against the United States" (citation omitted)); *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (stating that "[i]f a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit," but that "[i]t nonetheless remains true that the Tucker Act 'does not create any substantive right enforceable against the United States for money damages'" (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980))).

### C.     Analysis

#### 1.     Issue Preclusion

The *Askan I* court dismissed Plaintiff's claim on the ground that it lacked subject matter jurisdiction under 28 U.S.C. § 1500, a statute that denies the Court of Federal Claims jurisdiction over claims whose operative facts share sufficient overlap with those of claims pending in other courts. *Askan I*, 155 Fed. Cl. at 225. Defendant argues that the claim in the instant case is essentially identical to the claim in *Askan I* and that "issue preclusion bars any attempt" to relitigate the jurisdictional question under Section 1500. Def.'s Mot. at 14. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). While claim preclusion bars re-litigation of a claim regardless of whether it raises the same issues as the earlier suit, "[i]ssue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)).

A party asserting issue preclusion as a defense must prove: "(1) the issues are identical to those in a prior proceeding, (2) the issues were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001). Courts have "long recognized that 'the principles of *res judicata* apply to questions of jurisdiction.'" *Underwriters Nat. Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706 (1982) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 166 (1932)).

The issues in *Askan I* and the instant case are identical. In *Askan I*, the dispositive issue was whether the operative facts underlying the original Complaint shared sufficient overlap with the operative facts underlying the District Court claims to compel dismissal under Section 1500.[2] Similarly, the instant case concerns the issue of whether the operative facts underlying the present Complaint share sufficient overlap with the operative facts underlying the District Court claims. If the factual allegations in the original *Askan I* Complaint and the present Complaint are the same, then the question of whether the operative facts in either case overlap with those in the

---

[2] As the *Askan I* court emphasized, its task was to "consider § 1500's jurisdictional bar only in relation to the plaintiff's original complaint in this court, not its amended complaint." *Askan I*, 155 Fed. Cl. at 221 (citing *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1367 (Fed. Cir. 2012) ("[J]urisdiction under § 1500 is dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation.")).

District Court Case presents the same issue. The same alleged government conduct is central to the claims in the original *Askan I* Complaint and the present Complaint: OFAC's block of the transaction returning Askan's down payment; OFAC's delay in issuing a license permitting the return of the funds; and OFAC's issuance of a license to the Comptroller that resulted in the funds escheating to the State of New York. *Compare* Compl. ¶¶ 1–17, *with Askan I* Compl. ¶¶ 1–28.[3] Because the factual allegations concerning the government's conduct in *Askan I* and the instant case are the same, the issue—whether the operative facts share sufficient overlap with those in the District Court Case—is also the same.

Plaintiff's claims satisfy the remaining factors for issue preclusion. The requirement that an issue must have been "actually litigated" is "generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it." *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1570 (Fed. Cir. 1983) (quoting *Cont'l Can Co. v. Marshall*, 603 F.2d 590, 596 (7th Cir. 1979)). In *Askan I*, the parties "actually litigated" the issue of whether these factual allegations trigger the Section 1500 bar because they briefed and argued the issue and the court disposed of it. *See* Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 13–19, *Askan I*, No. 20-1870C (Fed. Cl. Apr. 16, 2021) (Dkt. 10); Pl.'s Resp. to Def.'s Mot. to Dismiss at 10–14, *Askan I*, No. 20-1870C (Fed. Cl. June 11, 2021) (Dkt. 13); Def.'s Reply in Supp. of Mot. to Dismiss at 3–9, *Askan I*, No. 20-1870C (Fed. Cl. June 25, 2021) (Dkt. 15); *Askan I*, 155 Fed. Cl. at 223–25.

Further, the issue was necessary to the resulting judgment. The requirement that an issue must have been necessary to the judgment "does not mean that the finding must be so crucial that, without it, the judgment could not stand," but "[r]ather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Mother's Restaurant, Inc.*, 723 F.2d at 1571. In *Askan I*, the issue of whether Section 1500 applied was not merely an incidental or collateral question; indeed, it was the crucial issue in the court's disposition of the case. *Askan I*, 155 Fed. Cl. at 225 ("Under 28 U.S.C. § 1500, the Court lacks jurisdiction over the plaintiff's claim and must dismiss the complaint.").

Finally, the party defending against preclusion, Plaintiff, had a full and fair opportunity to litigate the issue. To determine whether a party had a "full and fair" opportunity to litigate an issue, courts consider "(1) whether there were significant procedural limitations in the prior proceeding, (2) whether the party had an incentive to litigate fully the issue, and (3) whether effective litigation was limited by the nature or relationship of the parties." *Banner*, 238 F.3d at 1354. Plaintiff has not alleged, and there is no indication, that it suffered from any procedural limitations in *Askan I*. Because the primary argument in Defendant's Motion to Dismiss

---

[3] The only differences in the factual allegations are that (1) the original complaint in *Askan I* stated that "Askan has still not been able to retrieve its down payment from the Comptroller," *Askan I* Compl. ¶ 34, and described efforts to secure that payment, *id.* ¶ 33, while the present Complaint states that "OFAC finally issued a license to the Comptroller to return the money to Askan," Compl. ¶ 16; (2) the original complaint in *Askan I* describes the requirements for escheatment under New York law and the GTSR, *Askan I* Compl. ¶¶ 29–33; and (3) the present Complaint includes an updated value of the attorneys' fees sought. *Compare Askan I* Compl. ¶¶ 7, 9, 34, *with* Compl. ¶ 17.

concerned Section 1500, and Plaintiff sought a significant sum in damages, it was incentivized to litigate the issue. *See* Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 13–19, *Askan I*, No. 20-1870C (Fed. Cl. Apr. 16, 2021); Pl.'s Resp. to Def.'s Mot. to Dismiss at 10–14, *Askan I*, No. 20-1870C (Fed. Cl. June 11, 2021). *See also B & B hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 159 (2015) ("Issue preclusion may be inapt if 'the amount in controversy in the first action was so small in relation to the amount in controversy in the second that preclusion would be plainly unfair.'" (quoting Restatement (Second) of Judgments § 28 cmt. j, (Am. L. Inst. 1982))). Additionally, the nature or relationship of the parties did not limit Plaintiff's ability to litigate effectively in *Askan I*. Plaintiff was represented by counsel and does not have any relationship to the United States that would distinguish it from a typical plaintiff bringing a similar claim. *See* 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4423 (3d ed. 2002); *c.f.*, *United States v. Pueblo of Taos*, 515 F.2d 1404, 1406–07 (Ct. Cl. 1975) (deciding, on "plain error" rather than *res judicata* grounds, that a prior decision was not entitled to preclusive effect because of the "guardianship or wardship" relationship between the plaintiff Indian tribe and the United States and because the plaintiff had no legal representation in the prior proceeding).

Accordingly, issue preclusion applies and Section 1500 deprives this Court of subject matter jurisdiction over Plaintiff's claims.

### 2. Section 1500

Even if issue preclusion did not apply, it is clear that 28 U.S.C. § 1500 would prevent this Court from exercising jurisdiction over Plaintiff's claims. Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

This statute deprives the Court of Federal Claims of jurisdiction over claims that are sufficiently similar to claims pending in other courts. A "'time-of-filing rule applies' such that jurisdiction under § 1500 is dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation." *Cent. Pines*, 697 F.3d at 1367 (citing *Keene Corp. v. United States*, 508 U.S. 200, 207–09 (1993)). To determine whether Section 1500 deprives it of jurisdiction, a court must decide: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (citing *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163–64 (Fed. Cir. 2011)).

7

The parties agree that the present action satisfies the first prong; the present Complaint was filed on September 2, 2021, while the District Court Case was still pending. *See* Def.'s App. at 3–10; Compl; *see also* Def.'s Mot. at 14 ("In this case, the first prong of the [Section 1500] analysis is clearly satisfied."); Pl.'s Resp. at 7 ("It is undisputed that Askan had a pending case in the District Court for the District of Columbia when the present lawsuit was filed in the Court of Federal Claims."). However, the parties disagree on the second prong, which addresses whether the two suits are for substantially similar claims. "'Two suits are for or in respect to the same claim, precluding jurisdiction in the Court of Federal Claims, if they are based on substantially the same operative facts, regardless of the relief sought in each suit,' or the legal theories asserted." *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1381–82 (Fed. Cir. 2017) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011)).

To determine whether there is "sufficient factual overlap" between the operative facts of the two actions to trigger Section 1500, *Tohono*, 563 U.S. at 317, courts apply two tests derived from the standards for evaluating *res judicata* at the time Section 1500 was enacted: the "act or contract test" and the "evidence test," *see Trusted Integration*, 659 F.3d at 1169 (citing *id.* at 316). If the court concludes through application of either test that the claims concern the same operative facts, Section 1500 precludes the court's jurisdiction.

### a. Act or Contract Test

Under the "act or contract test," courts distinguish claims that are "single and entire," which are those that "immediately arise out of one and the same act or contract," from "several and distinct" claims that arise "out of different acts or contracts." *Tohono*, 563 U.S. at 316 (quoting J. Wells, *Res Adjudicata and Stare Decisis* § 241 at 208 (1878)). If the claims arise out of the same act or contract, Section 1500's bar on the court's jurisdiction applies. *Id.* Applying this test, it is clear that the District Court Case and the instant case share the same operative facts. Identical government conduct is central to the claims in both complaints: OFAC's block of the transaction returning Askan's down payment; OFAC's delay in authorizing the return of the funds; and OFAC's issuance of a license to the Comptroller that resulted in the funds escheating to the State of New York. *See Askan I*, 155 Fed. Cl. at 223–25; *see also* Def.'s Mot. at 14; Def.'s Reply at 4–6; *compare* Compl. ¶¶ 1–17, *with* Def.'s App. at 15–24 (District Court Case Am. Compl. ¶¶ 15–46, 49, 54–55, 60, 64–66).

Plaintiff's contrary assertions are unpersuasive. It claims that "[t]he only overlap between the suits are [sic] of background facts, not of operative facts," because the District Court Case concerned "OFAC's internal decision making regarding the blocking itself and the subsequent escheatment to New York" while the instant case concerns the issue of "whether the delay in the return of funds was so extraordinary as to render a taking of Askan's business." Pl.'s Resp. at 7. Plaintiff also contends that it is "too broad" to state that both cases arise out of the same transaction. *Id.* at 9. Instead, it asserts that the instant case concerns "OFAC's blocking of Askan's funds," while the District Court Case concerns "OFAC['s] obstructing information regarding the license denials and the escheatment." *Id.* It insists that the claims "differ[] in that the conduct alleged in the District Court Lawsuit was ongoing whereas the Federal Claims lawsuit involves a transaction which has ceased." *Id.*

8

But this is incorrect. In fact, the present Complaint addresses the block of the funds; the delay in their return; and the license that allowed the escheatment by the Comptroller. *See* Compl. ¶¶ 8–17, 19, 21. The District Court Case similarly concerned the block, the delay, and the license to the Comptroller. Def.'s App. at 16–20 (District Court Case Am. Compl. ¶¶ 21–27 (blocking of transaction), 17–20 (delay in return), 32–35 (license to the Comptroller). Regardless of the contents of "OFAC's internal decision making" or the answer to the legal question of whether the delay "render[ed] a taking of Askan's business," the government conduct was the same. Pl.'s Resp. at 7. Under this test, the two lawsuits share the same operative facts and Section 1500 bars Plaintiff's claims. *See U.S. Home Corp. v. United States,* 108 Fed. Cl. 191, 195 (2012), *aff'd*, 550 F. App'x 895 (Fed. Cir. 2014) (per curiam) ("The term 'operative facts,' in the context of § 1500, refers to facts alleging government conduct which gives rise to claims against the United States.").

### b. Evidence Test

Courts applying the "evidence test" assess whether "the same evidence support[s] and establish[es] both the present and the former cause of action." *Tohono*, 563 U.S. at 316 (quoting 2 H. Black, *Law of Judgments* § 726 at 866 (1891)). Under this test, as well, Section 1500 deprives this Court of jurisdiction over the Complaint.

Askan insists that it "will not rely on substantially the same evidence to support the claims in the District Court Lawsuit and this lawsuit." Pl.'s Resp. at 7. While "[t]he District Court Lawsuit hinged upon the administrative record developed by OFAC," which "is insufficient for this action," it states that the evidence in the instant case "will extend beyond the administrative record" and "center on the delay in return and the costs incurred by Askan due to OFAC's taking." *Id.* at 7–8.

However, "[n]ot all the plaintiff's claims in the district court . . . were in fact brought under the APA," and in any event, "[P]laintiff has failed to support its argument that a claim based on the administrative record cannot preclude jurisdiction under § 1500 of a non-administrative record claim." *Askan I*, 155 Fed. Cl. at 225. As in *Askan I*, "[b]oth the plaintiff's suit in the district court and the one here would likely rely on the same evidence," namely, "documents and testimony regarding the blocking of its funds; the denial of the plaintiff's license applications; the issuance of the Comptroller's license to escheat the funds; and the identity of the [sanctioned person or entity that triggered the block]." *Id.* Accordingly, Section 1500 bars Plaintiff's claims.

### 3.    Remaining 12(b)(1) Defenses

### a. Mootness

As an alternative ground for dismissal, Defendant argues that Plaintiff's claims are moot. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *see also, e.g.*, *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'" (quoting *United States v. Alaska Steamship Co.*, 253 U.S. 113, 116 (1920)). A

9

claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1983) (quoting *U.S. Parole Comm'n v. Geraghty*, 455 U.S. 388, 396 (1980)).

Defendant contends that "Askan's regulatory takings claims are moot because it has already received the funds at issue, with interest." Def.'s Mot. at 21 (first citing Compl. ¶¶ 13, 15; and then citing Def.'s App. at 31–33). In the Government's view, "there is no longer a live controversy because Askan would not be able to obtain any additional compensation even if the Court were to find that a temporary regulatory taking occurred as Askan alleges." *Id.* It points to the Federal Circuit's statement that "[t]he usual measure of just compensation for a temporary taking . . . is the fair rental value of the property for the period of the taking," *id.* (quoting *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1581 (Fed. Cir. 1990)), and argues that the interest Plaintiff received with the return of its funds "would necessarily equate with the rental value of money," *id.*

Plaintiff does not address the impact of the interest it received on the issue of mootness, and instead asserts that the consequential losses it alleges sustain its claim as a live case or controversy. Pl.'s Resp. at 12. But, as Defendant notes, "it is well established that the Takings Clause . . . 'does not provide for compensation for consequential losses.'" Def.'s Mot. at 21 (quoting *Taylor v. United States*, 959 F.3d 1081, 1088 n.3 (Fed. Cir. 2020) (collecting cases)). With the return of Askan's funds, "the controversy between the parties has ended," and the claims are moot. *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1329 (Fed. Cir. 2008). Accordingly, this Court lacks jurisdiction over those claims.

### b. Standing

In order to have standing to assert a takings claim against the Government, a foreign plaintiff must demonstrate a "previous significant voluntary connection with the United States." *Atamirzayeva v. United States*, 524 F.3d 1320, 1325 (Fed. Cir. 2008) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990)). Plaintiff insists that it satisfies this "substantial connection test," *id.*, "because Askan voluntarily did business with an American company using United States currency," Pl.'s Resp. at 11. Defendant argues that Plaintiff, a foreign corporation with no physical presence in the United States, lacks standing to bring a takings claim. Def.'s Mot. at 17–20. It contends that the relevant transaction is the attempted transfer of funds between the Swiss escrow agent and Plaintiff, both of which are foreign entities, and that the original, intended sale of an airplane by an American company does not establish a voluntary presence in the United States. *Id.* at 18. Further, Defendant argues that the payment-clearing process under the GTSR is not a significant connection for the purposes of constitutional standing. *Id.* at 19.

Regardless of whether Plaintiff's connection to the United States was voluntary, it was not sufficiently significant for Askan to establish standing. Askan's one-time, isolated attempt to purchase an airplane is its sole connection to the United States. A "voluntary connection" must also be both "previous" and "significant," and Plaintiff has not pled facts sufficient to demonstrate either. *See Verdugo-Urquidez*, 494 U.S. at 271; *see also Doe v. United States*, 95 Fed. Cl. 546, 575 (2010) ("Plaintiff must show connections to the United States independent of

his claim."). Plaintiff lacks standing to sustain a claim against the United States under the Fifth Amendment Takings Clause.[4]

### III. Conclusion

For the reasons set forth above, this Court lacks subject matter jurisdiction over Plaintiff's claims. Accordingly, Defendant's Motion to Dismiss pursuant to RCFC 12(b)(1) is **GRANTED**, Plaintiff's Motion for a Hearing on its Opposition to Defendant's Motion is **DENIED** as moot, and the Complaint must be **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

                                                           s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge

---

[4] Because there is no subject matter jurisdiction over the claims asserted in Plaintiff's Complaint, the Court does not address Defendant's defenses under RCFC 12(b)(6). *See* Def.'s Mot. at 22–36; Def.'s Reply at 12–20.